UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:09-CV-155-FDW-DCK

| | |
|---|---|
| LAVINIA WHITE, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>COMMISSIONER OF )<br>SOCIAL SECURITY, )<br>)<br>Defendant. )<br>_____ ) | ORDER |

THIS MATTER comes now before the Court upon Plaintiff Lavinia White's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 (Doc. No. 11) and the Defendant Commissioner's motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 (Doc. No. 16). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits.

For the reasons set forth, Plaintiff's Motion for Summary Judgment is DENIED, and the Commissioner's Motion for Summary Judgment is GRANTED. Accordingly, the ALJ's decision is AFFIRMED.

**I. PROCEDURAL HISTORY**

On May 25, 2004, Plaintiff filed an application for a period of disability and Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, alleging an onset date of disability of February 13, 2004. Her application was initially denied by Administrative Law Judge ("ALJ") Saul W. Nathanson after a hearing on August 28, 2007, and Plaintiff thereafter requested an administrative hearing with the Appeals Council. While this claim was pending with

the Appeals Council, Plaintiff filed a second application for DIB, which the Commissioner of Social Security (the "Commissioner") approved with an onset date of disability of October 24, 2007. Plaintiff's appeal regarding the first application was heard February 12, 2009, and the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

Plaintiff, who has exhausted her administrative remedies, filed this action on April 15, 2009, and the parties' motions for summary judgment are ripe for the Court's review under 42 U.S.C. §405(g).

## II. FACTUAL BACKGROUND

Plaintiff was born on April 27, 1948, has an eleventh grade education, is divorced and currently lives with her adult daughter in Charlotte, North Carolina. Plaintiff has past relevant work experience as a communications specialist and records clerk for the Charleston County Sheriff and as a telephone customer service representative. (Transcript of the Record of Proceedings ("Tr.") 65-70, 372-373).

Relevant to Plaintiff's claim of disability, Plaintiff, in her first application, alleged she became disabled due to visual impairments caused by sarcoidosis, uncontrolled diabetes mellitus, and chronic back pain of the low back, hip, and leg. (Tr. 51-56, 60). Regarding her daily activities, Plaintiff testified that she was unable to use a computer at home, could no longer read or drive, and had episodes where she did not feel well and was devoid of energy. She also testified that she felt depressed. (Tr. 386).

Plaintiff was referred to the Storm Eye Institute at the University of South Carolina for eye problems she began having in December of 2001, which were eventually diagnosed by Dr. Chavis as sarcoidosis causing uveitis, chronic cystoid macular edema, and cataracts. (Tr. 200). Dr. Chavis,

responding to Plaintiffs counsel's request for information, stated that Plaintiff "would have some difficulty with computer work" even though "some people are able to work with this level of vision[.]" Ultimately, Dr. Chavis was unable to form a reasoned opinion as to the needs required by Plaintiff's occupation. When Plaintiff moved to Charlotte, she terminated her treatment at the Storm Eye Institute and began to receive treatment from Dr. Weidman, a board certified ophthalmologist. (Tr. 324-26). In 2007, Dr. Weidman executed an affidavit explaining how Plaintiff's visual problems, in his opinion, precluded her from any occupation "for which she may be qualified[.]" Dr. Weidman in June of 2008 completed another medical opinion at the request of Plaintiff's counsel stating Plaintiff would be unable to have "any full-time clerical office-based job[.]"

In May of 2002, Plaintiff met with Dr. Bolster, complaining of leg pain in addition to her diabetes and iritis (which she had symptoms of since July of 2001). (Tr. 208). X-rays revealed likely osteoarthritis of the sacroiliac (SI) joints and facet joint oseoarthritis of L4-5 and L5-SI.

In early 2003, due to Plaintiff's blood sugar beginning to run very high, Dr. Stapleton recommended she perform only day shifts. Dr. Weisglass agreed with this recommendation and began to see Plaintiff intermittently for fit-for-duty examinations until January of 2004. (Tr. 218). Much concern was expressed as to the impact on her job of her inability to work nights due to her diabetes.

In the summer of 2004, Dr. Bolster noted continued complaints of back pain, which only increased with prolonged standing and activity. She therefore ordered an MRI of the lumbar spine, which revealed conditions suggestive of a pars defect but without evidence of spondylolisthesis. (Tr. 170). Plaintiff was then referred to Dr. Glaser, who concluded that Plaintiff had "very slight grade 1 degenerative spondylolisthesis of L4 on L5 with mild stenosis." (Tr. 267).

Plaintiff was referred to the MUSC Pain Management Clinic for treatment, which she

received from October 2004 until January 2006. The Clinic helped Plaintiff with physical therapy and prescribed various medications, but, although injections were recommended, Plaintiff never consented to them.

In 2005, at the request of Plaintiff's counsel, Dr. Bolster completed a Residual Functioning Capacity ("RFC") rating form, where she opined that the back, hip, and leg impairment limited Plaintiff to "light" maximum exertional ability from February 2004 to the present. This RFC rating allowed Plaintiff to "occasionally" bend at the waist and which required "frequent and/or unscheduled breaks for relief of pain[,]" but which ultimately did not render Plaintiff "totally disabled." (Tr. 212-213).

Plaintiff declined all recommendations for injections by Dr. Bolster, Dr. Glaser, and Dr. Gilbert of the MUSC Pain Management Clinic because of her aversion to needles.

### III. STANDARD OF REVIEW

42 U.S.C. § 405(g) grants this Court the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Social Security Commissioner, with or without remanding the cause for a rehearing. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). It is the Court's duty to determine both whether the findings of the commissioner are "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Substantial evidence has been defined as "more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986); *see also* Richardson v. Perales, 402 U.S. 389, 401(1971). The Fourth

Circuit has recognized "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays, 907 F.2d at 1456. The Court may set aside a determination of the ALJ only if it is not supported by substantial evidence or it is based upon legal error. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

Plaintiff first contends that the Commissioner's approval of Plaintiff's second application, which found her disabled as of October 24, 2007, was "inconsistent" with the Commissioner's decision to uphold the ALJ's first decision that Plaintiff was not disabled anytime before October 23, 2007. In response, the Commissioner argues that it was due to new and material evidence submitted by Plaintiff in her second application, based largely on a March 22, 2008, examination, which revealed a new impairment allowing the Appeals Council to back-date disability to a date before the 2008 examination. Furthermore, the Commissioner contends that the Appeals Council correctly determined that Plaintiff's evidence rendered in the second decision did not warrant remanding the case to the ALJ. The Court believes Plaintiff's arguments on this issue are unfounded.

As defined by the Social Security Act, one way of finding a claimant disabled is to conclude that the individual is unable to perform "any substantial gainful activity by reason of any *medically determinable* physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(A) (emphasis added). The distinction between "symptoms" and "signs" is especially significant with regards to Plaintiff's first contention. "Symptoms" are descriptions made by Plaintiff, which "alone are not enough to establish" impairment, whereas "signs" are "anatomical, physiological, or psychological abnormalities which can be observed, apart from your symptoms" and must "be shown by medically

-5-

acceptable...techniques." 20 C.F.R. § 404.1528 (a)-(b). While Plaintiff may have testified in August of 2007 that she was depressed and that she started taking Cymbalta for depression that same year, there is no evidence Plaintiff sought medical treatment for depression before the first hearing. Therefore her symptoms alone were insufficient to establish such impairment existed. Without a medically determinable impairment, "an individual *must* be found not disabled. . . ." SSR 96-4p (emphasis added).

The Appeals Council gave substantial weight to Dr. Neal's March 22, 2008, examination that diagnosed Plaintiff with "major depressive disorder," and the Appeals Council found it reasonable to establish a date of disability before that March, 2008, date. (Tr. 6). However, upon further consideration, the Appeals Council concluded that any onset date before the ALJ's first decision was not warranted, due largely to the fact that no depression had been alleged with the "additional limitations" included in Plaintiff's first application. As it was not until the March 22, 2008, examination "which indicated a new impairment" that Plaintiff was ever medically diagnosed as depressed and also due to the fact that Plaintiff did not allege sufficient evidence of depression in her first application, the Appeals Council properly determined that the second decision did not warrant a remand to the ALJ to determine whether Plaintiff was disabled before October 23, 2007. (Tr. 6). The Court finds that the evidence upon which the Appeals Council based its decision was substantial and that the ALJ committed no error of law.

Plaintiff secondly asserts that the ALJ failed to make a function by function analysis of Plaintiff's past relevant work (as required by SSR 82-62) and also failed to include code number citations to the Department of Labor's *Dictionary of Occupational Titles* ("DOT") jobs, both of which Plaintiff contends require reversal or at a minimum, remand, for more detailed findings. The Commissioner counters by contending that the ALJ correctly found, in accordance with SSR 82-62,

that Plaintiff was capable of performing her past relevant work. Plaintiff points to two portions of SSR 82-62 as being central to the determination of this second issue. One such provision states:

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

SSR 82-62. However, the Court feels that another section of SSR 82-62 is also extremely pertinent to the resolution of the issue. Specifically, SSR 82-62 states that to determine whether a claimant is capable of performing a past relevant job, the following findings of fact must be contained in the ALJ's decision, all of which were found in this case: "1. A finding of fact as to the individual's RFC[;] 2. A finding of fact as to the physical and mental demands of the past job/occupation[;] 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation." SSR 82-62.

The ALJ in this case made specific reference to the evidence that he considered, as well as explicit mention of which evidence was given more or less weight. The ALJ noted that he considered the findings of the State agency medical consultants "particularly in the absence of a functional capabilities evaluation completed by a treating physician," and due to this absence they were not binding on the ALJ's decision. The ALJ further considered additional medical evidence that was not at the disposal of the State agency physicians, and in doing so, even disagreed with their finding that Plaintiff had the RFC to do "medium" work, although "generally supportive" of the conclusion that Plaintiff was not disabled. Subject to only one exception, none of the treating physicians described Plaintiff as "disabled" or imposed specific functional limitations.

Here, the ALJ identified the individual's functional limitations and restrictions and assessed her work-related abilities on a function by function basis. The ALJ found that Plaintiff had the RFC

to perform light work that did not require concentrated exposure to hazards and further found that the past relevant work, as she performed them, were semi-skilled and sedentary (receptionist), semi-skilled and sedentary (information clerk), and semi-skilled and light (records clerk). Furthermore, the ALJ made note of the fact that, according to the DOT, the past relevant work as performed in the national economy were all semi-skilled sedentary. The Fourth Circuit has stated that, by making an RFC determination, a court thereby implicitly makes a finding that the claimant can work on a regular and continuing basis. Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006).

As to the contention that the failure to explicitly reference the applicable DOT numbers warrants remand, there are two ways in which a claimant is able to perform their past relevant work at step 4 of the sequential evaluation process. The first way is if that work can be performed as it generally is in the national economy, and the second way is if the claimant herself is able to perform the work in the same manner as she had previously done. SSR 82-62; see also 20 C.F.R. § 404.1560(b)(2). As recognized by SSR 00-4p, a key source for ALJ's is the DOT, which gives information about the requirements of the claimant's past relevant work, as performed in the national economy, in making disability determinations. SSR 00-4p.

In the present case, however, Plaintiff's past relevant work did not fit perfectly into any of the occupations set forth in the DOT, and therefore the vocational expert had to rely on two other jobs with DOT descriptions that included some of Plaintiff's job duties. The ALJ made explicit reference to the DOT and its classifications for the jobs Plaintiff held (which were "all semi-skilled 'sedentary' jobs") in its decision. In Tarpley v. Astrue, the court adopted a Memorandum & Recommendation that found when the vocational expert listed a non-existent DOT code for that title and incorrectly identified a job which was not classified as the vocational expert testified, the ALJ's reliance was error. 2009 WL 1649774, *14 (E.D.N.C. June 1, 2009). However, the court found

such error was harmless because the ALJ appropriately relied upon the vocational expert's testimony regarding two other positions that claimant could perform. Id. This Court is unable to see (and Plaintiff cites no cases stating otherwise) how failing to cite DOT code numbers makes it impossible for a Court to review the adequacy of a sequential step when Plaintiff's past relevant work itself did not fit into any one job description. SSR 00-4p specifically mentions that there is a possibility that DOT information could conflict with evidence from VE's, leaving to the adjudicator the decision to determine whether the VE's explanation "is reasonable and provides a basis for relying on the VE" rather than the DOT. SSR 00-4p. As stated above, the applicable standard of review in this case precludes the Court from being able to "reweigh the evidence or substitute its own judgment . . . even if it finds the evidence preponderates. . . ." Hays, 907 F.2d at 1456. As such, the Court finds the Commissioner did not commit an error of law and substantial evidence supported the decision.

Plaintiff next contends that the ALJ's finding regarding the severity of Plaintiff's eye condition was inconsistent with the ALJ's later conclusion that Plaintiff was able to return to her previous work, and the ALJ's failure to clarify this inconsistency was reversible error. The Commissioner argues that even though the conditions were assessed as severe by the ALJ, that in and of itself did not preclude Plaintiff from performing her past relevant work. The Court agrees with the Commissioner, and overrules Plaintiff's contention of error.

According to the five-step sequential evaluation process used to determine whether a person is disabled, a finding at the third step that a claimant suffers from a severe medical impairment does not automatically lead to a determination that the person is disabled. A person is only disabled after the third step if they can establish an impairment or combination of impairments which "meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement[.]" 20

C.F.R. § 404.1520. In this case, the ALJ specifically stated that, while Plaintiff's eye condition was severe, it was neither medically equal to nor did it meet the threshold Listing of Impairments.

The ALJ therefore reached the fourth step in the evaluation process and determined that despite the "severe" impairments, Plaintiff still retained a RFC that allowed her to do her past relevant work. (Tr. 20). Central to the ALJ's ultimate decision was the fact that, while Plaintiff testified as to the intensity, persistence, and limiting effects of her pain and other symptoms, such testimony was not persuasive due to "inconsistencies" found in the record. Plaintiff failed to consistently report to her treating physicians many of her symptoms, including fatigue, that her medications made her drowsy, and that her back and legs were in pain. The ALJ specifically relied on the fact that if Plaintiff's functional ability was truly hindered by these problems, they would have been consistently reported, and failing to do so led the ALJ to conclude that they were not so severe as to prevent her from performing gainful activity.

Furthermore, as to her visual impairment, there were again inconsistencies in the record. While Plaintiff testified that her visual acuity worsened over time, the ALJ's interpretation of substantial medical evidence conflicted with that testimony. (Tr. 20). Plaintiff testified that she had "difficulty" looking at a computer screen, but the ALJ was unable to equate difficulty with inability. In fact, the ALJ found Plaintiff was able to work consistently for years with many of the impairments that she claimed now rendered her disabled. See Cauthen v. Finch, 426 F.2d 892 (4th Cir. 1970) (stating that longstanding impairments are not disabling if the claimant is able to work regularly with them prior to the alleged date of disability). While Plaintiff's vision fluctuated between 20/30 and 20/40 in her right eye between January 2004 and June 2004, her vision in her left eye appeared to remain constant at 20/50 during that same time-period. However, the ALJ also relied on the fact that in 2005 Dr. Chavis stated that Plaintiff's visual acuity was 20/25 in the right

eye and 20/30 in the left and that "her visual acuity had not changed." (Tr. 21). Dr. Chavis went on to state in 2006 that Plaintiff would "have some difficulty" doing work with computers and to do so would need to enlarge the font on her computer to "adequately see[,]" but that people were "certainly" capable of working with Plaintiff's level of vision. The inconsistencies in the records as to the "worsening" of Plaintiff's vision led the ALJ to conclude that the duties of Plaintiff's past relevant work were all consistent with an RFC of "light," which did not require concentrated exposure to hazards. Plaintiff has failed to demonstrate any shortfall in the ALJ's decision warranting reversal under this Court's limited standard of review, and its decision on this issue should therefore be affirmed.

Lastly, Plaintiff contends that the ALJ's failure to make a specific finding as to Dr. Bolster's opinion that Plaintiff would require "frequent and/or unscheduled breaks" to alleviate her pain, requiring her to leave her work station, requires reversal or remanding so more specific findings can be made. The Commissioner counters that the ALJ properly took into consideration the Medical Source Opinions, and that the process by which it undertook the Medical Opinions were done in accordance with the requisite Regulations and Rulings. This Court also agrees with the Commissioner on this issue.

An ALJ may generally give more weight to the opinions of a treating source, but the ALJ may discount the authority of a treating physician if it lacks clinical and laboratory evidence and is inconsistent with the record as a whole. 20 C.F.R. § 404.1527(d)(2). Plaintiff heavily relies on the opinions of Dr. Bolster, who stated Plaintiff would need "frequent and/or unscheduled breaks" to be able to work at her previous occupations, and that such breaks, if they occurred hourly for at least five minutes, would preclude Plaintiff from performing her past relevant work in arguing the ALJ made inadequate findings of fact. However, Plaintiff fails to recognize that the ALJ also gave great

weight and discussed in detail most (if not all) aspects of Dr. Bolster's RFC rating form.

SSR 96-7p provides that "[w]hen evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements," and "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. In the present case, the ALJ explicitly stated that the opinions of Dr. Chavis and Dr. Bolster were to be given "very great weight," Dr. Weidman's opinions were to be given "little weight," and that with only one exception, Plaintiff's treating physicians all stated Plaintiff was not disabled or "imposed specific functional limitations" that would lead to a finding that Plaintiff was unable to perform gainful employment. As SSR 96-7p requires, the ALJ then explained his specific reasons for the weight given to each individual's statements. In finding no "specific functional limitations" which would preclude Plaintiff from performing gainful activity, the ALJ was undoubtedly making a finding that the frequent breaks suggested by Dr. Bolster did not limit Plaintiff from "performing light work." Assuming arguendo that the ALJ was not referring to these breaks when it mentioned the other "limitations[,]" Dr. Bolster's opinion was the only one that mentioned this limitation and therefore went against the greater weight found in the record. Accordingly, less weight could be given to that specific aspect of Dr. Bolster's opinion. As such, even if such failure constituted error, the Court is not convinced that remanding this case would lead to Plaintiff being "awarded benefits should the error be corrected." 2009 WL 313345, at *4 (M.D.N.C. Feb. 5, 2009).

Again, this Court will not "reweigh the evidence or substitute its own judgment" on review, and therefore based on the findings made by the ALJ and the fact no error of law was committed, the Court overrules Plaintiff's objection. Hays, 907 F.2d at 1456.

## V. CONCLUSION

Based on the foregoing reasons, the Court finds the Commissioner's decision denying benefits was based on substantial evidence and applied the correct legal standards. Therefore, Plaintiff's Motion for Summary Judgment (Doc. No. 11) is DENIED and the Commissioner's Motion for Summary Judgment (Doc. No. 16) is GRANTED. Accordingly, the Commissioner's decision is AFFIRMED. The Clerk is directed to CLOSE the case.

IT IS SO ORDERED.

Signed: September 10, 2010

Frank D. Whitney
United States District Judge